v. Putt, 1-9-1-1-6-9 Good morning, Mr. Collins. Good morning. Good morning, and may it please the Court. The facts of this case are not disputed. In the first week of September 2017, I was a student at Charter Oak State College and was enrolled in an online class taught by the appellee, Rebecca Putt. I made a comment in response to a classroom assignment, another student responded, and a polite discussion of the classroom assignment was carried on according to the assignment instructions. At some point on September 6, the entire thread, which is to say my original comment, and all successive comments, including those of another student, were deleted. I later received an email directly from Putt's personal Charter Oak State College email address, wherein she claimed that, quote, I will be deleting your post so it does not offend others. It offended me, unquote. No clear explanation of what she found offensive was offered, and she sought no explanation from me as to the meaning or intent of my comments. The appellee has argued that under the rule of Hazelwood, my speech could be censored for, quote, legitimate pedagogical concerns. But even if Putt's taking personal offense to my opinion, or on behalf of a hypothetical person, it might be considered a type of legitimate pedagogical concern, which I find highly dubious. The expanse of Hazelwood rule only applies when the speech in question was school-sponsored, or when a reasonable person might think that it was, per this Court's decision in Giles v. Marano, Circa 2000. It also has to be viewpoint-neutral, right? So do you think that they discriminated the school on the basis of viewpoint? I do believe my view—it was my viewpoint that she took issue with, and I put that in my complaint—specifically a comment that made a joke about the nature of the video we had to watch, which she, in her email to me, compared to something she said was something that she had seen personally in her own life, happened many times. She thinks that actually the video is realistic, and you think it's not realistic. Exactly. She's taking down your comment. Well, she said— She gives you full credit for the response, right? Yes, I don't understand why. Was there ever any contention that it wasn't responsive to the prompt, or it's about something that's not responsive to the— That's not what she said in her email. I mean, I don't know. I couldn't say, you know, for what she's—what the counsel will say. May I continue? Yes. Thank you. Even if this Court believes that my comments could somehow be perceived as school-sponsored, Putt has never made that argument or suggested how or why my own classroom speech could be carrying the, quote, imprimatur of the school. I have not made any original legal arguments in my papers. I have only cited to this Court's decisions— This Blackboard is an online classroom? Right. It is. A virtual classroom. A virtual classroom wholly owned and maintained by Charter Oak State College. I have not made any original legal arguments in my papers. I have only cited to this Court's decisions and those of the Supreme Court and applied them to the undisputed facts. Putt has conceded these points by refusing to argue against them and instead cited to us older cases from other circuits which are incompatible with the precedents set by this Court and the Supreme Court. The district court's ruling on this matter is therefore ambiguous and not in line with relevant precedents. The appellee's appeal brief even references this problem obliquely, stating on page 5 that the district court did not explicitly state whether it was dismissing the individual capacity claims, fulfilled or stated claim, on the grounds of qualified immunity or both, which is merely a way of saying they could not tell for certain on what grounds for dismissal they prevailed. Contrary to the appellee's assertion, however, the district court did not conduct the proper qualified immunity analysis because, as this Court has held in cases such as Penney v. Empire Blue Cross Blue Shield and McKenna v. Wright, qualified immunity is only available at this stage of litigation if the necessary facts appear on the face of the complaint and, quote, it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief, unquote. No such holding was articulated, analyzed, or justified in the decision. So, Mr. Collins, you have reserved two minutes for rebuttal. I said one last thing. Okay. Go ahead. It is, therefore, logical to conclude that this case was dismissed on the grounds that it failed to state a claim. Given the aforementioned facts and the relevant case law, the district court's decision was plainly made in error. Thank you. Good morning, Your Honors. My name is Mary Lenahan. I represent the appellee, Defendant Rebecca Putt, in this matter. This Court should affirm the district court's decision on both the First Amendment and procedural due process grounds. First, the court correctly applied Hazelwood, the controlling legal president, in classroom First Amendment cases. The court, consistent with this court's precedent, gave deference to the professor's academic decision to remove the post based on its content and the manner of expression in order to serve the pedagogical goals. But he gets full credit for the response, right? That's correct, Your Honor. Is the argument that it's not responsive to the question? The argument is that it was addressed to the material, a critique of the material being used in the class, rather than to the assignment questions. And, therefore, that it was not responsive to the classroom assignment, correct? So if the teacher is asking the student to explain how this corresponds to interactions in real life, and the student says, well, I don't think it's really realistic, it's not responsive to the question? The appellant? If he had written that actually it is realistic, like actually this is a pretty realistic depiction of interactions that might happen in a nursing home, would the post have been removed? If the response was to the material, a critique of the material, which the appellant himself in the complaint alleged that it was, the post should have been removed whether it was a compliment about the material or an insult about the material. So you're saying that even if he had written this is a very realistic depiction of interactions that might happen at a nursing home or at an art exhibit, whatever it was, the post still should have been removed? As a non-responsive. But since she gave him full credit and she just sort of took offense at the way he was saying it, how do we know from the record that that's really the reason? She gave him full credit so as not to penalize him for his post. The reason we know that this was not viewpoint discrimination and it was, in fact, viewpoint neutral as required under Hazelwood is because the professor specifically said in her email that this is a rant about the material and the course. And further, the appellant himself has admitted that that's exactly what this was. In his complaint, he admitted that this was a rant about the material in the classroom. And that was not responsive to the post. So the fact that he expressed his viewpoint about the material doesn't protect him from First Amendment restrictions that are allowed in a non-public forum under Hazelwood. In fact, his response. So you're saying that if he had said this is a really realistic depiction and it really captures an interaction that might happen between an old man in a wheelchair and a young person doing an art exhibit, that also should have been removed and it would have been removed. But if we don't think from the record it's clear that it would have under those circumstances, does that mean that there's viewpoint discrimination here? No, Your Honor. In fact, there's not an allegation in the complaint that there was another post that was, in fact, like the one you're describing, positive, that was allowed to stay in the classroom. So you have a complaint that alleges, I was ranting about the classroom material, which is per se not responsive to the questions that are included in the complaint. You can see what the assignment was. The professor's email herself says, I am not going to tolerate a rant about the material because Ranting about the classroom materials in a manner that some might find offensive will not be tolerated. So it's not just ranting about the classroom materials. It's also the manner in which he did it. Correct, but manner is also She goes on to say, I have worked in an elder care facility for five years. I have seen conversations that were very similar to this play out countless times. So she's making an argument that it actually is realistic, right? But she's I disagree with him on the substance of his comment, doesn't she? But she's engaging in a discussion about the materials themselves. But her decision to remove the post is because the comments are not responsive to the questions. The email that she had sent to Mr. Collins didn't say the line about ranting about the classroom materials, but only said, I have worked in an elder care facility for five years. I have seen conversations that were very similar to this play out countless times. I will be deleting your post so it does not offend others, which is also in her email. If it had said that and not the ranting line, then it would seem like it was viewpoint discrimination, would it not? I concede our argument would be weaker, but you would still have the allegation in the complaint by the plaintiff himself that says, this was a critique about the materials, not responsive to the question. It doesn't matter if it was a critique about the materials. It only matters whether a critique on one side would have been tolerated and a critique on the other side would have been censored, right? Well, under Hazelwood, the professor has the right to restrict speech based on content and manner. And the argument here is that the content of the plaintiff's speech was not responsive to the question presented in the assignment, and therefore she restricted it based on the content. His viewpoint, in order to be viewpoint neutral under Hazelwood, any viewpoint, whether it's positive or negative, that is not related to the content that the professor is looking for should be deleted. Right, but only if both viewpoints are treated the same. Exactly. Only deleting one view, even if it's off topic. Even if, we said in PEC, right, even if it's related to legitimate pedagogical concerns, if you're only silencing one viewpoint and not another viewpoint, that's still unacceptable. Correct, but there's no allegation in the complaint here. That's not this case. Correct, and there's no allegation in the complaint that the professor allowed other viewpoints on the course material that were complementary or positive to allow to remain. Thank you. So, thank you. I will rely on my brief for anything else. Thank you. Mr. Collins, you've got, I think, two minutes. I'd just like to point out that in my complaint, I said it could fairly be called a critique of the class materials. It was responsive. It referred, as I said in my complaint, with underlying highlighted citations to the text, as was required by the assignment. I discussed the nature of the materials because the assignment was about perception. I also said in my complaint that I intended to be provocative, interesting, and humorous, because a lot of these online discussions, frankly, are just students paraphrasing what they've read in the materials, and there's really nothing interesting about it. I was simply trying to do my best as a student. Were there other students who didn't have your critique, that where their comments were made up? I'm sorry, could you repeat it, Your Honor? So, we're saying the opposing counsel just said that there's no evidence that anybody who thought that the materials were realistic or liked the materials were not censored. Is there any evidence? Well, the other student who I was engaging in the discussion with, the online discussion, she believed that the materials were, in fact, useful. She said that I was misunderstanding them. We had that conversation. Her comments were deleted also. However, I'd like to point out that that's not an indication that this was viewpoint neutral. It was impossible to delete my thread and not delete hers as well, technically. So, other students in the class, as I mentioned in my complaint, also had the same opinion that I did about the classroom materials, and their comments were not deleted. Many students complained. You're saying in your comment that you think the actors in this scenario were acting unreasonably, right? They were acting bizarrely. I assume that other answers that are responsive to the prompt, in terms of talking about how this corresponds to interaction in real life, must have been saying that it is realistic or that it could correspond to something in real life. Well, other students were commenting that the character, the disabled character, was acting very unreasonably, very angrily. It was hard to believe that anyone would act that way in an interpersonal exchange. And those comments remained. I think my comment was targeted because I went into more depth and made more arguments than other students did. They made passing comments about it, and I actually took up the idea that these materials did not adequately express the course intent or the course topics and concepts. And I felt that was important. I also felt, like I said, that the portrayal of the disabled person was offensive and mined offensive stereotypes. When you watch that video, what you come away with is that you should defer to this gentleman, not for any of the reasons that were in the course text, but because he's angry and because maybe he's disabled. And that should, I guess, pity him or I don't know. It felt that way to me when I watched it. I would love to show the video, but copyrighted material, you know. On that note, thank you very much. Thank you. We'll reserve decision, Mr. Collins. And the final case on this morning's calendar, Campbell v. Saul, 19-1752, is submitted. Court is adjourned.